## PROVIDENCE.

---

CITIZENS SAVINGS BANK *vs.* WILLIAM J. MITCHELL, Administrator with the will annexed, *et al.*

Gifts *causa mortis* require for their support the clearest and most satisfactory proof.

To establish a gift *causa mortis* of a sum of money in a savings bank, W. (the claimant) and another testified that the testatrix, on the day before her death, told W. to get her satchel and take the books which it contained, among which was the savings bank book, and bring them to her ; that this being done, the testatrix then passed them back to W. saying, "Take these books and keep them, they are yours forever."   Another witness testified that on the same day the testatrix told her that she (the testatrix) had had a conversation with W., and said to the witness "I have given her (W.) all that I have."   W. was a daughter of the testatrix by her second husband.   About two years previously the testatrix had made her will by which, after making several small bequests, she gave a legacy of $10,000 to B., a daughter by her first husband, and the residue amounting to about $5,000, to W., naming W. as executrix of the will. The will was made pursuant to an arrangement between the testatrix and her second husband when the latter was about to make his will, that he should provide for his daughters, W. and another, and that she should provide for B. her daughter by her first husband.   The gift if sustained would almost wholly defeat the provision in the testator's will for B.   No adequate reason was shown for a change of purpose on the part of the testatrix towards her daughter B.

*Held*, that the proof was not sufficiently clear and satisfactory to establish a gift *causa mortis*.

BILL OF INTERPLEADER.

*December* 13, 1894.   MATTESON, C. J.   Gifts *causa mortis* require for their support the clearest and most satisfactory proof.   No doubt or suspicion should be left in the mind of

the court concerning the essential facts.   In *Grey* v. *Grey,*
47 N. Y. 552, 556, it is said, "the clearest proof on the part
of the claimant is required.   It (the gift) must be estab-
lished beyond suspicion."   Again, in *Cosnahan* v. *Grice,* 15
Moore, P. C. 215, 223, it is said, "Cases of this kind demand
the strictest scrutiny.   So many opportunities, and such
strong temptations, present themselves to unscrupulous per-
sons to pretend these death-bed donations, that there is al-
ways danger of having an entirely fabricated case set up.
And, without any imputation of fraudulent contrivance, it
is so easy to mistake the meaning of persons languishing in
a mortal illness, and by a slight change of words, to convert
their expressions of intended benefit into an actual gift of
property, that no case of this description ought to prevail,
unless it is supported by evidence of the clearest and most
unequivocal character."   And see also *Conklin* v. *Conklin,*
20 Hun, 280 ; *Lewis* v. *Merritt,* 42 Hun, 161, 163 ; *Shirley*
v. *Whitehead,* 1 Ired. Eq. 130, 133.

We do not think that the evidence in this case on the part
of the claimant meets the requirement of the rule.   The gift
is testified to by the claimant, Sarah E. Williams, who is the
daughter of the deceased, and by a witness named Bowlin, a
boarder of Miss Williams.   They testify that on Sunday,
July 30, 1893, the day before the decease of Mrs. Douglass,
she told Miss Williams to get her satchel and take the books
which were contained in it (among which was the bank book
issued by the complainant, the Citizens Savings Bank,) and
bring them to her ; that Miss Williams did so and handed
the books to her mother ; that Mrs. Douglass passed them
back to Miss Williams with the statement that they were
hers ; that she should keep them ; they were hers forever.
A witness, Elizabeth A. Jupiter, called to corroborate the
testimony of the claimant and Bowlin, testified that on Sun-
day morning, the day of the alleged gift, Mrs. Douglass told
her that she had just had a conversation with Sadie (Miss
Williams) and that Mrs. Douglass said, "I have given her
(Sadie) all that I have ;" that she gave no reason for having
done so any more than Sadie had been the one to stick by

her through her illness, and had done what no one else had. Neither Miss Williams nor ·Bowlin, who alone testify to the fact of the gift, state that any reason was given by Mrs. Douglass for making the gift. They testify merely to the bald statement by Mrs. Douglass to Miss Williams, "Take the books and keep them, they are yours forever."

The testimony discloses that it had long been a settled purpose of Mrs. Douglass to make a larger provision for her daughter Mrs. Blake than for· Miss Williams. By her will dated March 7, 1891, a few months prior to her marriage to her third husband, Douglass, she had, after making several small bequests, bequeathed a legacy of $10,000 to Mrs. Blake and had given the residue of her estate, amounting to about $5,000, to Miss Williams whom she named as executrix of the will, a fact which may explain the delivery of the bank books to the latter. The testimony also shows that she had thus made her will pursuant to an arrangement, between her second husband, Williams, and herself when he was about to make his will, that he should provide for his daughters Miss Williams and a Mrs. Brown, and that she should provide for Mrs. Blake, her daughter by her first husband. The gift *causa mortis*, if sustained, will almost wholly defeat the provision for Mrs. Blake.

Without adverting to the other matters in the testimony which lessen the weight to be given in our opinion to the testimony in support of the gift, it does not seem to us that any adequate reason or motive on the part of Mrs. Douglass is shown for her alleged change of purpose.

One of the reasons assigned is that Mrs. Blake did not visit her mother during the last two weeks of her illness. There is nothing, however, in the evidence to show that the relations between Mrs. Douglass and Mrs. Blake did not continue to be friendly and affectionate to the last. Mrs. Blake called to see her mother on Sunday, July 16, 1893, two·days after her mother's illness began, and spent several hours with her mother. She offered to remain that night with her mother, but the offer made in the presence of the mother and Miss Williams was declined by the latter. Mrs. Blake

went away with the promise from Miss Williams to send word to her if her mother should get worse. Mrs. Blake's husband and daughter called from time to time subsequently to inquire how Mrs. Douglass was getting on, but no word was sent to Mrs. Blake that her mother was worse. Nor did she learn that her mother was worse until word was sent by Miss Williams that Mrs. Douglass was dead. We presume that the reason no word was sent was not any intention on the part of Miss Williams to keep Mrs. Blake in ignorance of her mother's condition, but because the death of Mrs. Douglass occurred more suddenly than was expected and without any very apparent change for the worse in her condition.

Another reason assigned for a change of purpose on the part of Mrs. Douglass towards Mrs. Blake is based on the testimony of the witness, Jupiter, that Mrs. Douglass had given all that she had to Miss Williams because Miss Williams had stuck by her through her illness which no one else had done. It appears from the testimony as already stated that Mrs. Blake had offered to stay with her mother the night of her visit to her and that the offer was declined. Furthermore, it appears that Mrs. Blake was married and had a family of her own to care for and that she lived at a distance of from thirty to thirty-five minutes ride in the street cars away, while Miss Williams had no family to require her attention and resided in the same house with her mother. She was the person on whom the duty of taking care of her mother in her illness most naturally devolved and therefore there would seem to be no special merit in the performance of the duty which rested on her equally with her sister and which she, by reason of her situation, could more conveniently perform.

A decree may be entered awarding the fund in suit to the respondent Mitchell, as administrator with the will annexed on the estate of the deceased.

*James M. Ripley*, for complainant.

*John M. Brennan*, for Sarah E. Williams.

*Edward D. Bassett & Edward L. Mitchell*, for the administrator.